**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

ALLISON WENDELBERGER, an individual,

   Plaintiff.

v.

LINKED.EXCHANGE, LLC., A North Carolina limited liability company,

ERIC MILLER, an individual,

   Defendants.

_____

**COMPLAINT AND REQUEST FOR JURY TRIAL**
_____

Allison Wendelberger, through her counsel, Steven L. Murray, Murray Law LLC, and Thomas H. Mitchiner, Mitchiner Law LLC, and submits her Complaint and Request for Jury Trial, asserting claims against Defendants, Linked.Exchange, LLC, and Eric Miller.

**<u>INTRODUCTION</u>**

This action is an employment dispute involving wage, hour, and retaliation issues. Plaintiff asserts claims under the Colorado Wage Claim Act, C.R.S. § 8-4-101, et seq., [CWCA], the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., [FLSA], the Colorado Minimum Wage Act ["CMWA"], C.R.S. § 8-6-101, et seq., and the Colorado Minimum

Wage Order, 7 C.C.R. 1103-1. [Colorado Wage Order # 38, effective January 1, 2022)].
The Colorado Minimum Wage Order is referenced as the COMPS Order # 38. [1]

Wendelberger worked for Defendants as an employee for over twenty-five months, from December 2019 through January 2022. Wendelberger alleges Defendants: (1) employed her; (2) did not pay her the wages due to her during her employment; (3) refused to honor and perform their promises to her; (4) retaliated against her because she complained to Defendants about their failure and refusal to pay her wages, by taking these actions: (a) Defendants refused to honor their agreement to pay her;  (b)  subjected her to a constructive discharge; and after her constructive discharge, (c) threatened never to pay her (i) unless she signed a confidentiality agreement; and (ii) if she had any communication with Defendants' clients or other related people in the insurance industry before she signed the confidentiality agreement.

## I.  PARTIES

1.      At all times in issue, Plaintiff Allison Wendelberger [Wendelberger] has been a resident of Colorado.

2.      Linked.Exchange, LLC [Linked] is a North Carolina limited liability company.

3.      During all relevant times, Linked acted directly or indirectly in the employer's interest concerning Wendelberger. Therefore, Linked acted as an employer, and it is an employer, as defined under the FLSA, CWCA, CMWA, and the COMPS Order # 38.

---

[1] Effective March 16, 2020, the Minimum Wage Order published annually at 7 CCR 1103-1 was renamed the Colorado Overtime and Minimum Pay Standards ("COMPS") Order.

4.      Eric Miller [Miller] is Linked's owner, Chief Executive Officer [CEO], and day-to-day manager.

5.      In Miller's capacity as the owner, CEO, and day-to-day manager of Linked, Miller was vested with the authority and exercised his authority to create and carry out Defendants' wage and hour practices.

6.      Miller oversaw all operations of Linked, including business strategy and daily operations. He assigned tasks, supervised, and managed all parts of Linked's business operations and customer interactions.

7.      Defendants directed Wendelberger to communicate all employment issues, including wage and hour issues and violations, to Miller, and Miller responded to these communications with the authority described above.

8.      Wendelberger followed the Defendants' directives to address all employment issues, including wage and hour issues and violations, with Miller.

9.      At all times, Miller acted directly or indirectly in the employer's interest about Wendelberger. Therefore, Miller acted as an employer, and he is an employer, as defined under the FLSA, CWCA, and CMWA, and the COMPS Order # 38.

10.     Wendelberger performed work for Defendants in Colorado within the judicial district of this Court.

11.     Defendants conducted business within the judicial district of this Court.

## II.  <u>JURISDICTION AND VENUE</u>

12.     Jurisdiction is proper under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

13.     Plaintiff requests the Court to exercise supplemental jurisdiction over Wendelberger's state law claims under the CWCA, CMCA, and COMPS Order # 38.

14.     The Court has proper supplemental jurisdiction over Wendelberger's state law claims under 28 U.S.C. § 1367.

15.     Wendelberger worked as a nonexempt employee of Linked and Miller, as defined by the FLSA, CWCA, CMWA, and the COMPS Order # 38.

16.     Defendants were employers under FLSA, CWCA, CMWA, and the COMPS Order # 38.

17.     The FLSA, CWCA, and the CMWA provide a private right of action to seek recovery of monetary damages.

18.     The FLSA provides a private right to action under 29 U.S.C. § 216(b).

19.     The CWCA provides a private right to action under C.R.S. § 8-4-110(2).

20.     The CMWA provides a private right of action. 7 Colo. Code Regs. § 1103-1:18

21.     At all times in issue, Wendelberger lived in Colorado, and she worked in Colorado for Defendants.

22.     Moreover, Wendelberger, in performing her duties for Defendants, traveled from Colorado to other states on multiple occasions to work with Defendants and Defendants' clients.

23.     In performing her duties for Defendants, Wendelberger regularly communicated with Defendants and customers outside of Colorado through email and telephone calls.

24.     Upon information and belief, Linked has an annual volume of sales or business done at least $500,000.00.

25.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events, namely, Wendelberger's work, Defendants' failure to pay her, Defendants' retaliatory actions against her, and the harm she suffered because of Defendants' actions, occurred in Colorado.

### III.     GENERAL ALLEGATIONS

**A.     Wendelberger Worked as Defendants' Employee**

26.     For all times in issue, Wendelberger: (1) lived in Colorado; (2) worked in Colorado; (3) provided services from Colorado – plus, she (4) traveled out of Colorado to perform services and meet people; and (5) engaged in interstate commerce.

27.     Wendelberger worked for Defendants as an employee for over twenty-five months from December 2019 through January 2022.

28.     During this period, Defendants paid her $13,000.00.

29.     Wendelberger is a highly experienced and respected professional in employee benefits and insurance.

30.     Linked is a custom technology solutions company using a cloud-based system to help clients with employee benefits.

31.     At all times, Wendelberger acted and served as the Defendants' employee.

32.     Wendelberger supervised no employees during her employment with Defendants.

33.     Wendelberger performed labor or services for Defendants at the Defendants' direction and their benefit.

34.     Defendants supervised Wendelberger and possessed and exercised control over Wendelberger's work.

35.     Defendants treated Wendelberger as their employee.

36.     Wendelberger never represented to anyone that she was in business for herself, and she did not conduct herself as if she were in business for herself.

37.     Wendelberger sought no clients for her benefit, and she had no clients.

38.     During Wendelberger's employment with Defendants, all the clients she worked with were the Defendants' clients.

39.     Wendelberger depended economically on Defendants – she was not in business for herself.

40.     Defendants determined the amount of money, if any, Wendelberger made from her work for Defendants.

41.     Defendants determined the method of any payment, if any, to Wendelberger.

42.     Linked and Miller assigned Wendelberger two titles consistent with her working as an employee, Area Vice President and Chief Operating Officer of Linked.

43.     Defendants represented Wendelberger to people outside of Linked, such as potential clients, as an employee of Linked.

44.     Defendants: (1) exercised complete control over Wendelberger; (2) had the power to hire and fire Wendelberger; (3) assigned Wendelberger her duties and tasks;

and (4) requested and authorized  business  cards  for Wendelberger, designating her as an Area Vice President.

45.     Wendelberger performed the duties and assignments Defendants assigned to her.

46.     Defendants admit Wendelberger performed work for them.

47.     Linked and Miller exercised control over Wendelberger by directing her to travel to meet with their potential clients multiple times, including meetings in: (1) Charlotte, North Carolina, in January 2020; (2) Birmingham and Guntersville, Alabama, in March 2020; (3) Charlotte, North Carolina, in November 2020; and (4) Alabama and Tennessee in May 2021.

48.     Wendelberger's relationship with Defendants was permanent for the period she worked for Linked, meaning she did not have a project-based or contractor relationship with Defendants.

**B.     Key Events: 2019**

49.     On or about December 5, 2019, Defendants provided an agreement to Wendelberger, designating her as an Area Vice President. Wendelberger and Defendants did not finalize this agreement concerning any compensation plan for Wendelberger.

50.     Based on the Wendelberger's location in Colorado, Defendants assigned Wendelberger as Area Vice President representing the geographical area of the middle of the United States.

51.     On or about December 11, 2019, Wendelberger attended her first meeting with Defendants and a prospective client.

52.     In this meeting in December 2019, Miller and Linked represented to the prospective client that Wendelberger was an employee of Linked. The meeting was held via zoom technology.

**C.     Key Events: 2020**

53.     On or about January 20-22, 2020, Wendelberger traveled to Charlotte, North Carolina, from Denver, Colorado, to attend Defendants' meetings.

54.     In the January 2020 meeting in Charlotte, Wendelberger attended a full-day meeting with a significant prospective client. This prospective client became a client with Linked.

55.     In the January 2020 meeting with Miller and the prospective client, Wendelberger played a key role – she prepared for the discussion and conducted significant parts of the meeting.

56.     Following the January 2020 meeting in Charlotte, the client stated that Wendelberger's role with Defendants was critical to its decision to work with Linked and Miller. Wendelberger was present when the client made this statement.

57.     The above client became the Defendants' most important client because: (1) the client provided access to significant revenue to Linked; and (2) the client held a unique and pivotal position in the industry, which allowed the client to refer other clients to Defendants.

58.     On or about March 9-11, 2020, Miller and Linked directed Wendelberger to travel from Colorado to Birmingham, Alabama, and Guntersville, Alabama.

59.     In Alabama, Wendelberger met with potential clients of Linked and Miller.

60.    One of the potential clients Wendelberger met with in Alabama became a client of Defendants.

61.    Based on current and projected revenues, this client significantly benefits Defendants.

62.    In May - June 2020, Wendelberger and Miller discussed Defendants paying her for her work.

63.    Defendants agreed Wendelberger had not been paid and needed to be paid; however, there was no resolution of the unpaid compensation issue for Wendelberger.

64.    On September 15, 2020, Wendelberger sent a message to Miller and Linked, stressing the importance of her being paid for work.

65.    On September 17, 2020, Wendelberger and Miller discussed her role and compensation.

66.    Miller agreed Defendants had not paid her and needed to pay her.

67.    Miller recommended to Wendelberger that her title would change to Chief Operating Officer, and she agreed with this recommendation.

68.    On or about September 17, 2020, Wendelberger and Defendants discussed a compensation plan; however, they never reached a final agreement concerning this specific compensation plan.

69.    On September 25, 2020, Defendants announced Wendelberger's promotion to Chief Operating Officer on a call with the entire company, plus two guests.

70.    The guests were Miller's closest advisor and a long-time business colleague.

71.     On or about November 16-19, 2020, Wendelberger traveled from Colorado to Charlotte, North Carolina, to attend Defendants' executive meetings and conduct many meetings with potential clients.

72.     On or about December 11, 2020, Miller sent Wendelberger a draft of the compensation agreement they had discussed in September. The document had several errors. Wendelberger and Defendants never reached a final agreement on this specific compensation agreement.

**D.     Key Events: 2021**

73.     In January 2021, Miller and Wendelberger discussed the agreement and changed the document.

74.     At the request of Miller, Wendelberger uploaded the revised version to the Linked document system.

75.     From February through April 2021, Wendelberger sent multiple messages to Miller requesting him to meet with her to finalize the compensation agreement.

76.     Wendelberger and Defendants never completed or finalized the compensation agreement which was discussed and revised between September 2020 – April 2021.

77.     In May 2021, Wendelberger traveled to Alabama and Tennessee from Colorado with the Linked executive team for several client meetings.

78.     On this trip, Wendelberger and Defendants' executives discussed dividing Linked into three companies.

79.     Under this plan, Wendelberger would run one of the three companies, serving as President, and Defendants would compensate her as a President. Defendants and Wendelberger never reached a final agreement on this compensation discussion and tentative plan.

80.     In June 2021, Wendelberger again informed Miller of the importance of Defendants paying her for her work.

**E.      July 2021 Agreement**

81.     Defendants, through Miller, reached an agreement in July 2021, on the compensation Wendelberger would receive from Defendants. [JULY 2021 AGREEMENT].

82.     The JULY 2021 AGREEMENT provided Defendants would pay Wendelberger $10,000.00 per month starting in August 2021, with $5,000.00 to be paid in July 2021.

83.     Based on the JULY 2021 AGREEMENT, Defendants agreed to pay Wendelberger: (1) $5,000.00 in July 2021; and (2) beginning in August, $10,000.00 per month in 2021, and continuing with a $10,000.00 payment each month.

84.     Despite Defendants' agreement to pay Wendelberger $5,000.00 in July 2021, Defendants did not make this payment in July 2021, when it was due.

85.     Defendants paid Wendelberger $5,000.00 on or about August 20, 2021. This payment was due in July 2021.

86.     After Wendelberger received the late July $5,000.00 payment in August 2021, she asked Miller when she would receive the $10,000.00 payment, which was due to her in August 2021.

87.     Defendants never paid Wendelberger: (1) the $10,000.00 payment which was due in August 2021; and (2) the $10,000.00 payment which was due in every month after August 2021.

88.     In September 2021, Miller told Wendelberger that Defendants could not pay her the agreed-upon amount of $10,000.00 per month, as required by the JULY 2021 AGREEMENT.

89.     Later in September 2021, Wendelberger told Miller she was being forced to leave her employment with Defendants because she was not receiving compensation.

90.     Miller encouraged Wendelberger to stay with Linked, telling her she would receive payment from the revenue Linked would receive from upcoming client projects.

91.     Wendelberger and Miller had several discussions about her role and compensation.

92.     Miller repeatedly encouraged Wendelberger to continue working for Linked.

93.     On October 28, 2021, Defendants paid Wendelberger a random $3,000.00.

94.     Later, on December 21, 2021, Wendelberger received a $5,000.00 payment from Defendants, a partial payment for one of the client's projects.

F.     **Events: 2022**

95.     From October 2021 through January 2022, Wendelberger continued working for Defendants, relying on the JULY 2021 AGREEMENT and Defendants'

representations she would receive compensation from the Defendants' revenue on pending projects.

96.     In early January 2022, Wendelberger contacted Miller several times about her compensation.

97.     Defendants constructively discharged Wendelberger and she resigned from her employment with Defendants on or about January 13, 2022.

98.     Defendants' constructively discharged Wendelberger because Defendants refused to pay her wages and failed to honor the promises they made to her, and thereby created an intolerable working environment.

99.     No reasonable person would continue working without getting paid.

100.    Wendelberger and Miller had a telephone discussion on January 14, 2022.

101.    Wendelberger asked how Defendants would compensate her for all her work for Defendants over twenty-five months.

102.    On the date of Wendelberger's constructive discharge on or about January 13, 2022, the JULY 2021 AGREEMENT required Defendants to pay her a total of $65,000.00 [$5,000.00 for July 2021 and $10,000.00 per month from August 2021 – January 2022 = $65,000.00].

103.    Defendants only paid Wendelberger $5000.00 of the $65,000.00.

104.    After the Defendants did not honor their agreement to pay Wendelberger $10,000.00 a month, Wendelberger and Miller reached no subsequent agreement on her compensation.

105.   Miller stated he could compensate Wendelberger based on past negotiations; however, these negotiations never resulted in an agreement.

**G.   Post-Employment Retaliation**

106.   Defendants retaliated against Wendelberger after she was constructively discharged.

107.   On January 17, 2022, after Defendants constructively discharged Wendelberger from employment, Miller requested Wendelberger sign a confidentiality agreement.

108.   Wendelberger did not sign the confidentiality agreement.

109.   On January 21, 2022, Wendelberger sent Miller an email requesting Defendants pay her for all her work for Defendants.

110.   On January 25-27, 2022, Miller again pressured Wendelberger to sign the confidentiality agreement.

111.   After Wendelberger's constructive discharge, Defendants, through Miller, threatened Wendelberger and retaliated against her by informing her that Defendants would never pay her: (1) unless she signed the confidentiality agreement; and (2) if she had any communication with Defendants' clients or other related people in the insurance industry, before she signed the confidentiality agreement.

112.   Defendants' threat to Wendelberger concerning her communications with Defendants' clients or other related people in the insurance industry harmed her interests because the threat made Wendelberger look unprofessional with her colleagues and

industry peers. Also, the threat adversely impacted her reputation and ability to seek employment from people and entities in the industry most likely to hire her.

113.    On February 25, 2022, Miller informed Wendelberger her payment for a specific project was delayed. Also, he asked her if she wanted to revisit her decision not to sign the confidentiality agreement.

114.    On April 12, 2022, Wendelberger sent Defendants a demand letter requesting compensation for her work for Defendants.

115.    From April 18, 2022, through April 27, 2022, Miller and Wendelberger exchanged several emails.

116.    Wendelberger and Miller had a telephone discussion on April 28, 2022.

117.    Defendants, through Miller, asked Wendelberger several times if she would return to work for Linked and him.

118.    The Defendants' actions created an intolerable working environment for Wendelberger, leading to her constructive discharge, by refusing to pay Wendelberger her wages and honor the JULY 2021 AGREEMENT.

119.    The Defendants' actions were willful actions and/or actions made in reckless disregard of Wendelberger's protected rights under the FLSA.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM

**[Fair Labor Standards Act – Minimum Wage – All Defendants]**

120.    Wendelberger incorporates and restates all allegations previously asserted in this Complaint as though contained herein.

121.   The purpose of the FLSA is to protect all covered workers from substandard wages and oppressive working hours, labor conditions detrimental to maintaining the minimum standard of living necessary for the workers' health, efficiency, and general well-being.

122.   FLSA requires employers to pay employees at least minimum wage for all hours they worked for the employer.

123.   Wendelberger was an employee of Defendants.

124.   Wendelberger performed work for Defendants as an employee.

125.   Defendants did not pay Wendelberger at least a minimum wage for all hours she worked for Defendant.

126.   Defendants only paid Wendelberger $13,000.00 for approximately twenty-five months of employment.

127.   In a typical work month, full-time employees work approximately 173.2 hours.

128.   In twenty-five months, Wendelberger would have worked approximately 4,330 hours.

129.   For her work, Defendants paid Wendelberger around $3.00 per hour.

130.   Defendants were required to pay Wendelberger at least $7.25 per hour under the FLSA.

131.   During her employment with Defendants, it should have paid her a total of $31,392.50 in minimum wages under the FLSA. Defendants only paid her $13,000.00.

132.    Defendants' actions were willful actions and/or actions made in reckless disregard of Wendelberger's protected rights under the FLSA.

133.    Because the Defendants did not pay Wendelberger at least minimum wages under the FLSA, Wendelberger has suffered damages.

## SECOND CLAIM

### [Violation of the Colorado Overtime and Minimum Pay Standards Order, # 38 – All Defendants]

134.    Wendelberger incorporates and restates all allegations previously asserted in this Complaint as though contained herein.

135.    The Colorado Minimum Wage Act [CMWA], C.R.S. § 8-6-118, and the Colorado Minimum Wage Orders authorize a private right to recover the minimum wage.

136.    Wendelberger is entitled to recover the unpaid balance of the full amount of minimum wages she is owed, together with reasonable attorney fees and court costs. COMPS Order # 38, 7 C.C.R. 1103-1 ¶ 18.

137.    Defendants' compensation policies and practices violate the Colorado COMPS Order # 38. 7 CCR 1103-1 et seq.

138.    Wendelberger was an employee under the COMPS Order # 38, and was she not exempt from the minimum wage provisions of the COMPS Order # 38.

139.    Miller and Linked are each an employer as defined by the COMPS Order # 38.

140.    Under the COMPS Order # 38, 7 CCR 1103-3.1, an employee must be compensated at the minimum hourly pay rate for all hours worked during the relevant period.

141.    The Defendants' failure to pay Wendelberger at least minimum wage for the hours she worked violates the COMPS Order # 38.

142.    Because the Defendants did not pay Wendelberger at least minimum wage for all the hours she worked, Wendelberger has suffered damages.

143.    Defendants were required to pay Wendelberger at least: (1) $11.10 per hour in 2019; (2) $12.00 per hour in 2020; (3) $12.32 per hour in 2021, and (4) $12.56 per hour in 2022, under the CMWA and COMPS Order # 38.

144.    During her employment with Defendants, Defendants should have paid Wendelberger a total of $52,512.80 in minimum wages under the CMWA and COMPS Order # 38.

145.    Defendants only paid Wendelberger $13,000.00.

146.    Because the Defendants did not pay Wendelberger at least minimum wages under the CMWA and the COMPS Order # 38, Wendelberger has suffered damages.

**THIRD CLAIM**

**[Colorado Wage Claim Act – All Wages Owed – All Defendants]**

147.    Wendelberger incorporates and restates all allegations previously asserted in this Complaint as though contained herein.

148.    The CWCA's purpose is to make sure employers make timely payment of wages and to provide adequate judicial relief when employers fail to pay wages when due.

18

149.   CWCA requires employers to pay employees all wages or compensation earned, vested, determinable and unpaid upon their separation from employment. C.R.S. § 8-4-101(14)(a)(I).

150.   Defendants did not pay Wendelberger all earned, vested, and determinable amounts due to her as agreed upon by the parties.

151.   Wendelberger worked for Defendants as an employee from December 2019 through January 2022.

152.   Wendelberger held the positions of Area Vice President and Chief Operating Officer.

153.   Upon information and belief, Chief Operating Officer and Area Vice Presidents are typically employees.

154.   In July 2021, Wendelberger, Miller, and Linked agreed Defendants would pay Wendelberger $5,000.00 in July 2021, and then pay $10,000.00 per month for her work starting in August 2021, and thereafter, pay her $10,000.00 in every month. [JULY 2021 AGREEMENT].

155.   Defendants did not pay Wendelberger the full amount due to her under the JULY 2021 AGREEMENT.

156.   Because the Defendants did not pay Wendelberger at least the amounts due under the CWCA, Wendelberger has suffered damages.

## FOURTH CLAIM

**[Breach of Contract – All Defendants]**

157.    Wendelberger incorporates and restates all allegations previously asserted in this Complaint as though contained herein.

158.    In July 2021, Defendants agreed to pay Wendelberger $5,000.00 in July 2021, and then pay Wendelberger $10,000.00 per month starting in August 2021, and then pay her $10,000.00 in every month after August 2021.

159.    Wendelberger accepted the offer and agreed to the JULY 2021 AGREEMENT in the above paragraph.

160.    Defendants partially performed the contract, the JULY 2021 AGREEMENT, by paying Wendelberger $5,000.00.

161.    Wendelberger performed all her duties under the contract.

162.    Wendelberger performed work for Defendants, which consisted of her traveling from Colorado to other states to meet with Defendants and Defendants' clients, securing clients for Defendants, communicating with Defendants and its clients via email and the telephone, and performing various other duties as assigned by Defendants.

163.    Defendants breached the JULY 2021 AGREEMENT contract because it did not pay Wendelberger for her work as required by the contract.

164.    Because the Defendants breached the contract, Wendelberger suffered damages.

**FIFTH CLAIM**

**[Unjust Enrichment – All Defendants]**

165.    Wendelberger incorporates and restates all allegations previously asserted in this Complaint as though contained herein.

166.    Wendelberger performed work for Defendants, as directed by Defendants.

167.    Defendants knew of Wendelberger's work for Defendants, and accepted the work she performed for Defendants.

168.    Wendelberger's work consisted of meeting with Defendants and Defendants' clients and obtaining clients for Defendants to allow Defendants to increase their revenue.

169.    At least two clients worked with Defendants because of Wendelberger.

170.    These clients have provided Defendants with significant revenue opportunities and these benefits are continuing.

171.    Defendants have only compensated Wendelberger by paying her $13,000.00.

172.    The Defendants' revenue from the clients brought in by Wendelberger far exceeds the money paid to her.

173.    For Defendants to keep the benefit of Wendelberger's work, the increased revenue, without having to compensate Wendelberger fairly, is unjust.

174.    Because of the Defendants' actions and their failure to pay Wendelberger, she has suffered damages.

## SIXTH CLAIM

**[Promissory Estoppel – All Defendants]**

175.    Wendelberger incorporates and restates all allegations previously asserted in this Complaint as though contained herein.

176.    In July 2021, Defendants agreed to pay Wendelberger $5,000.00 in July 2021, and then pay Wendelberger $10,000.00 per month starting in August 2021, and then pay her $10,000.00 in every month after August 2021.

177.    Defendants promised to pay Wendelberger the above amounts.

178.    An employee will not work for a company without being paid wages, so Defendants knew Wendelberger would rely on this representation and perform work for them.

179.    In reliance on the Defendants' promise, Wendelberger continued working for Defendants and did not look for other open positions.

180.    If Defendants had not made the promise to pay Wendelberger, she would not have continued to work for Defendants.

181.    Wendelberger suffered a detriment because she performed work for Defendants, and they did not compensate her for her work.

182.    It is unjust for Defendants not to honor their promise to pay Wendelberger money for her work.

183.    The only way to prevent injustice is to enforce the Defendants' promise to pay Wendelberger $10,000.00 per month.

184.    Because of the Defendants' conduct, Wendelberger suffered damages.

## **SEVENTH CLAIM**

### **[CWCA and COMPS ORDER # 38– Retaliation – All Defendants]**

185.    Wendelberger incorporates and restates all allegations previously asserted in this Complaint as though contained herein.

186.    The CWCA prohibits retaliation against an individual who complained about practices that may violate the Act. C.R.S. § 8-4-120.

187.    The COMPS Order # 38 [Section 8.5] prohibits retaliation against an individual who complained about practices that may violate the Act.

188.    Wendelberger complained to Defendants they: (1) had not paid her minimum wages; and (2) had not paid her according to the JULY 2021 AGREEMENT.

189.    Wendelberger told Defendants she would not continue to work for free; and if they wanted to keep her, they needed to pay her wages.

190.    Defendants retaliated against Wendelberger by refusing to pay Wendelberger: (1) the wages the parties agreed the Defendants would pay her under the JULY 2021 AGREEMENT; and (2) minimum wages due to her.

191.    Defendants retaliated against Wendelberger by constructively discharging Wendelberger from employment.

192.    Defendants' actions, including the nonpayment of minimum wages to Wendelberger and their refusal to pay her the wages promised in the JULY 2021 AGREEMENT, made, or allowed Wendelberger's working conditions to become so difficult or intolerable that she had no other choice but to resign.

193.    Following Wendelberger's constructive discharge, Defendants continued to retaliate against her. Defendants, through Miller, threatened Wendelberger and retaliated against her by informing her: (1) if she communicated with any clients or other industry colleagues, Defendants would nullify any agreement to pay her and never pay her, before she signed the confidentiality agreement; and (2) Defendants would never pay her unless she signed confidentiality agreement.

194.    Wendelberger did not sign the confidentiality agreement.

195.    Wendelberger's discharge caused her to suffer a loss of wages.

196.    Pursuant to the CWCA and COMPS Order # 38, Wendelberger seeks back pay and all available remedies under the CWCA and COMPS Order # 38.

## EIGHTH CLAIM

### [FLSA – Retaliation – All Defendants]

197.    Wendelberger incorporates and restates all allegations previously asserted in this Complaint as though contained herein.

198.    The FLSA, 29 U.S.C. § 215(a)(3), provides it is unlawful for an employer to discharge an employee because the employee has complained about practices that may violate the FLSA.

199.    Wendelberger complained to Defendants they: (1) had not paid her minimum wages; and (2) had not paid her according to the JULY 2021 AGREEMENT.

200.    Wendelberger told Defendants she would not continue to work for free, if they wanted to keep her, they needed to pay her wages.

201.    Defendants retaliated against Wendelberger by refusing to pay Wendelberger: (1) the wages the parties agreed the Defendants would pay her under the JULY 2021 AGREEMENT; and (2) minimum wages due to her.

202.    Defendants retaliated against Wendelberger by constructively discharging Wendelberger from employment.

203.    Defendants' actions, including the nonpayment of minimum wages to Wendelberger, and their refusal to pay her the wages promised in the JULY 2021 AGREEMENT, made, /or allowed Wendelberger's working conditions to become so difficult or intolerable that she had no other choice but to resign.

204.    Following Wendelberger's constructive discharge, Defendants continued to retaliate against her. Defendants, through Miller, threatened Wendelberger and retaliated against her by informing her: (1) if she communicated with any clients or other industry colleagues, Defendants would nullify any agreement to pay her for her work and never pay her, before she signed the confidentiality agreement; and (2) Defendants would never pay her unless she signed the confidentiality agreement.

205.    Wendelberger did not sign the confidentiality agreement.

206.    Wendelberger's discharge caused her to suffer a loss of wages.

207.    Defendants' actions were willful actions and/or actions made in reckless disregard of Wendelberger's protected rights under the FLSA.

208.    Wendelberger seeks back pay and all available remedies under the FLSA.

## V.     REQUEST FOR RELIEF

WHEREFORE, Plaintiff Alison Wendelberger respectfully requests this Court to enter judgment in Alison Wendelberger's favor and against Linked.Exchange, LLC, and Eric Miller, on all claims and to award these remedies:

(a)     To enter a judgment for Wendelberger and against Defendants, finding Defendants' actions violated the CWCA.

(b)     To award Wendelberger the wages the parties agreed she would earn under the CWCA.

(c)     To award Wendelberger all available remedies under the CWCA.

(d)     To enter a judgment for Wendelberger and against Defendants, finding Defendants' actions violated the FLSA.

(e)     To award Wendelberger at least the federal minimum wage under the FLSA for all the hours she worked for Defendants.

(f)     To find Defendants' violation of the FLSA were willful actions.

(g)     To award Wendelberger liquidated damages under the FLSA.

(h)     To award Wendelberger all available remedies under the FLSA.

(i)     To enter a judgment for Wendelberger and against Defendants, finding Defendants' actions violated the Colorado Minimum Wage Act [CMWA], and the COMPS Order # 38.

(j)     To award Wendelberger at least the Colorado minimum wage under the CMWA and the COMPS Order # 38.

(k)     To enter a judgment for Wendelberger and against Defendants, finding that Defendants breached the contract between the parties.

(l)     To award Wendelberger damages under her breach of contract claim.

(m)     To enter a judgment for Wendelberger and against Defendants on Wendelberger's promissory estoppel claim.

(n)     To award Wendelberger damages on her promissory estoppel claim.

(o)     To enter a judgment for Wendelberger and against Defendants, finding Defendants' failure to pay Wendelberger wages unjustly enriched Defendants.

(p)     To award Wendelberger damages on her unjust enrichment claim.

(q)     To enter a judgment for Wendelberger and against Defendants, finding Defendants retaliated against Wendelberger under the CWCA and the COMPS Order # 38.

(r)     To enter a judgment for Wendelberger and against Defendants, finding Defendants retaliated against Wendelberger under the FLSA.

(s)     On Wendelberger's retaliation claim under the FLSA: (i) award Wendelberger damages; (ii) find Defendants conduct was willful; (iii) award Wendelberger liquidated damages under the FLSA; and (iv) award Wendelberger all available remedies under the FLSA.

(t)     On Wendelberger's claims under the CWCA, CMWA, and COMPS Order # 38: (i) award Wendelberger damages; and (ii) award Wendelberger all available remedies under the CWCA.

(u)     To award Wendelberger attorney fees and costs.

(v)     To award Wendelberger pre-judgment and post-judgment interest at the proper rate provided by law.

(w)     To award Wendelberger all other legal and equitable relief to which Wendelberger is entitled under any law this Court considers just, equitable, and proper.

## VI. <u>JURY TRIAL REQUEST</u>

Under Fed.R.Civ.P. 38 (a)(b)(c) and all laws providing for a right to trial by jury, Wendelberger seeks a jury trial of all claims and issues.

Date: November 30, 2022.


Respectfully submitted,

Murray Law, LLC

<u>/s/ Steven L. Murray</u>
Murray Law, LLC
3900 E. Mexico Ave. Suite 300
Denver, CO 80210
Telephone: (303) 396-9952
Email: steven@smurraylaw.com


Mitchiner Law, LLC

<u>/s/Thomas H. Mitchiner</u>
Mitchiner Law, LLC
1240 S. Parker Rd. Suite 103
Denver, CO 80231
Telephone: 720.538.0371
Email: tmitchiner@mitchinerlawllc.com

*Attorneys for Plaintiff Alison Wendelberger*


<u>Plaintiff's Address:</u>
5083 Snowberry Lane, Evergreen, CO  80439